CARRIE A. PIERCE & another, executors, *vs.* OLIVER H. PERRY (afterwards PERCY G. BOLSTER & another, executors).

Suffolk.    April 3, 1905. — October 19, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Trust.    Limitations, Statute of.*

A man who has acted as the financial agent and trusted adviser of an unmarried sister without experience in business, who has had possession of her personal securities, has collected her income and paid it out to her, and has made investments for her from time to time, having told her that he would take care of her property as he did of his own, may be found to have been a trustee for her, so that the statute of limitations is no defence to a suit in equity brought against him by the executors under the will of his sister for an accounting, and a bill alleging these facts sets out enough to show that the statute of limitations is not applicable.

In the absence of evidence of a previous demand or of a repudiation of the trust the statute of limitations does not apply to a suit in equity for an accounting for funds held by a trustee.

BILL IN EQUITY, filed October 7, 1901, and amended February 10, 1902, by the executors under the will of Martha A. Perry, late of Boston, against Oliver H. Perry, of Boston, for an accounting, containing the allegations described in the opinion.

On the suggestion of the death of the defendant the special administrator of the estate of the defendant was admitted to defend the suit, and later the executors under the will of the defendant were admitted in his place.    The case was referred to Lewis G. Farmer, Esquire, as master.    He filed a report in which he found that the amount of $18,668.58 was due to the plaintiffs from the estate of Oliver H. Perry.

The case came on to be heard before *Hammond,* J. upon the pleadings, the order of reference, the master's report, and the objections and exceptions thereto.    The justice overruled certain exceptions of the defendants to the master's report relating to the admission or exclusion of evidence, and, at the request of the parties, all right of appeal from the overruling of these exceptions being waived, reserved the other questions raised by the remaining exceptions of both parties for determination by

the full court, such decree to be entered as law and justice might require.

Afterwards the reservation was discharged, and the parties, by a stipulation filed in the case, agreed, with the master's consent, to certain changes in the master's report. Whereupon, at the request of the parties, *Loring,* J. again reserved the questions raised by the former reservation for determination by the full court upon the record as amended, such decree to be entered as law and justice might require.

*W. L. Putnam & S. Bell,* for the plaintiffs.

*H. R. Bailey & P. G. Bolster,* for the defendants.

HAMMOND, J. 1. The defendants contend that the statute of limitations is a bar to the recovery of any sum received by Oliver H. Perry more than six years before the bringing of this suit. The total amount which it is contended is thus barred is $9,238.77, including interest. The defendants contend that the relation of Perry to his sister, the plaintiff's testatrix, was not that of a trustee, but simply that of a single agent for the collection of money and a mere custodian. As to this the master has found that " he was not a mere custodian, as claimed by the defence, and that he was more than a financial agent, as alleged in the bill; that he was really a trustee, [and] that the statute of limitations did not run in his favor." This finding should stand unless upon the facts found and evidence reported it appears to be erroneous.

As to this question of trust, although the master has not reported the evidence verbatim, he states that he has reported it in substance. The report is somewhat voluminous, but the following may be regarded as a brief summary of the facts bearing upon this question.

Oliver, the defendant, Martha, the plaintiff's testatrix, and Mrs. Moseley were the three surviving children of Augustus B. Perry, who died in November, 1887, leaving his property real and personal, one half to Oliver and one quarter to each of his daughters. Oliver and Mr. Moseley, the husband of one of the daughters, were the executors, and they kept the accounts in the name of A. B. Perry and Company. They managed the real estate, and from time to time made division of the rents and of the principal and income of the personal property. Up to the

time of her father's death Martha had no property of her own. She was then fifty-seven years old. " She had always lived at home with her parents, and, with the exception of a trip to Europe some years before her father's death, her life had been simple and uneventful." She was an intelligent woman, but up to the time of her father's death she had no particular knowledge of or experience in business matters. Her share of her father's estate amounted to more than $30,000. She liked to travel, and although " economical, even close," she spent considerable money in gratifying this taste. Besides making short journeys she went once to Alaska, once to the Yellowstone Park, and twice to Europe; and at the time of her death which occurred very suddenly, she was planning a trip to Japan. She does not seem to have collected any money herself. Her part was paid to her brother, and when she needed money she went to him.

On May 12, 1888, Mr. Moseley brought her a check for her first dividend of income and gave it to her. She took it, but said that he might as well " pay the dividends to Oliver." Accordingly the subsequent checks for her share were by her instructions drawn to the order of " Oliver H. Perry, trustee," and were by him so indorsed and deposited with his own funds in a national bank. On June 12, 1888, Oliver, Martha and Mrs. Moseley received their respective shares of certain railroad bonds, a part of their father's estate. Mrs. Moseley received hers, but Oliver said to Martha that he would keep hers in his box without charge; she told him to do so, and he put them there together with other bonds which he afterwards bought for her. The coupons from these bonds were deposited like the dividends in his name at the bank. In 1889, a house belonging to the estate of Augustus B. Perry was sold, the purchaser giving a mortgage back for $2,000, which, at the defendant's suggestion, was taken in Martha's name as an investment. It is not profitable to recite further details of the collection by Oliver of money belonging to his sister Martha's estate. The report goes into the matter very fully, and it is sufficient to say that she personally had but little, if anything, to do with the collection or investment of her money or with the care of it.

Owing to the death of both principals there is but little information as to what express contract, if any, was made

between them, and what there is comes entirely from Oliver. In May, 1900, speaking to one of the tenants in a store belonging to the estate, respecting his relations with his sister, he said that Martha had told him to do with her property as he would with his own. He also told one Grant, a close personal friend of his, that he had charge of his sister's property; and to another friend he said that he kept the bonds in his box because his sister did not want to pay the expense of a separate one, and that he had told her that he would take care of her property as he did of his own. In a letter of July 2, 1888, he informs her that he has collected the money on certain bond coupons, and he asks what she wants him "to do with the money." In another letter he says: "I deposited at Provident Savings Bank for you $600; believe they don't pay interest over $1,000; so when you have some more money, if you do not want to use it right off, should buy a bond, say the N. Y. & N. E. first, but when it comes round you can tell." He afterwards bought such a bond and told Mr. Moseley he had bought it for Martha.

We are of opinion that upon the whole evidence the question whether he was the mere custodian of the property of his sister or whether there was an element of trust in the relation between them was a question of fact for the master, and we cannot say that the finding that the relation was one of trust was clearly erroneous, so far as respected the defence of the statute of limitations. See *Jones* v. *McDermott*, 114 Mass. 400; *Campbell* v. *Whoriskey*, 170 Mass. 63.

2. The defendants further contend that as they have pleaded the statute of limitations as a bar, the plaintiffs were bound either to allege in their bill the facts which avoid it by any exception, or specially reply to it. The defendants contend that the plaintiffs have done neither. The true rule is tersely stated in *Piatt* v. *Vattier*, 9 Pet. 405, 416: "And the doctrine is now clearly established, that if the statute of limitations is relied on as a bar, the plaintiff, if he would avoid it by any exception in the statute, must explicitly allege it in his bill, or specially reply [to] it; or, what is the modern practice, amend his bill, if it contains no suitable allegation to meet the bar."

While it is true as contended by the defendants that there is no special replication here, we are of opinion that the bill sets

out enough to avoid the statute, or rather to show that the statute is not applicable. It sets out that the defendant Oliver acted as the financial agent and trusted adviser of the plaintiff's testate, and as such did the various acts described in the bill. It thus sets out a trust. To such a trust the statute is not applicable, at least in the absence of a demand. *Campbell* v. *Whoriskey, ubi supra.* It is not a claim against which the statute would run and which would be barred by it but for some exception upon which the plaintiff relies, but is a case against which the statute does not run.

*Exceptions to the master's report overruled; decree for the plaintiffs accordingly.*