JOHN C. SCHMIDT *vs.* FRED SCHMIDT.

Hampden.     September 23, 1913. — February 27, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, SHELDON, DE COURCY, & CROSBY, JJ.

*Trust,* What constitutes. *Limitations, Statute of. Evidence,* Relevancy and materiality. *Witness,* Cross-examination.

If, at the trial of an action of contract between two brothers, it appears that the plaintiff had assigned and transferred to the defendant, who was trustee under the will of their father for the benefit of the plaintiff and in other ways had acted in a fiduciary capacity for the plaintiff, all his share in the estate of their mother, who also had died, and had received therefor a sum of money which he at once had returned to the .defendant under an agreement by the defendant that he would care for it and repay it with interest whenever the plaintiff asked for it, and that more than six years later the plaintiff demanded the money and the defendant refused to repay it, the jury are warranted in finding that the money was placed in the defendant's possession in trust for an indefinite time, so that the statute of limitations did not begin to run in favor of the defendant until, upon the plaintiff demanding the money, the defendant repudiated the trust.

If one brother, for the purpose of hindering, delaying and defrauding his creditors, assigns his share in the estate of his deceased mother to another brother and the assignee pays him a sum of money therefor which the assignor thereupon delivers to the assignee in trust for himself, the fraud as to creditors in the assignment does not prevent an enforcement of the trust, both because the assignment was valid as between the brothers, and because the assignor, to prove and enforce the trust, did not have to rely on the fraud.

At the trial of an action by one brother against another to recover a sum of money which the defendant had paid to the plaintiff for an assignment of the plaintiff's share of their mother's estate and which the plaintiff had returned to the defendant in trust to care for and to repay on demand, it appeared that the

defendant also was trustee under the will of their father for the plaintiff's benefit and the plaintiff was permitted, subject to exceptions by the defendant, to introduce evidence tending to show that the defendant in his conduct as trustee under the father's will had acted improperly and for his own benefit rather than for the plaintiff's. The judge instructed the jury, among other things, in substance that it became "important in your inquiry with respect to the conduct of these men and the kind of men they were to determine, among other things, how that estate [of the father] was administered . . . by" the defendant "with respect to the rights of" the plaintiff. *Held,* that the exceptions of the defendant should be sustained, since the evidence as to conduct of the defendant in the administration of the estate of the father was outside the issue on trial and prejudicial, and under the instructions the jury were permitted to consider it.

CONTRACT for the sum of $1,500, alleged to have been paid to the defendant at his request on July 6, 1901, upon the defendant's promise to keep it and care for it for the plaintiff, to pay him interest and to return it at any time upon request. Writ dated July 18, 1908.

In the Superior Court the case was referred to James L. Doherty, Esquire, as auditor and afterwards was tried before *Hall,* J. The material facts in evidence are stated in the opinion. At the close of the evidence, the plaintiff asked for the following rulings, among others:

"3. Even if the purpose of the assignment was to keep the interest of the plaintiff away from his creditors, as alleged by the defendant, nevertheless, if the defendant paid the plaintiff $1,500 therefor and received back the $1,500 thus paid under an agreement to repay it, the plaintiff would have a right to recover therefor."

"6. If Fred Schmidt agreed to pay interest to John C. Schmidt, Jr., upon the sum of $1,500 without specifying the rate of interest, then he is bound to pay interest at the rate of six per cent. per annum."

The judge gave the foregoing rulings, subject to exceptions by the defendant.

The defendant asked for the following rulings:

"1. Upon the pleadings and the evidence the plaintiff is not entitled to recover."

"6. If the purpose of the plaintiff and the defendant in passing the instrument of July 6, 1901, was to protect the plaintiff from his creditors, and thereby hinder, delay and defraud his creditors, the plaintiff cannot recover."

"8. The plaintiff's claim is barred by the statute of limitations.

"9. The plaintiff cannot recover because he made no demand upon the defendant for the payment of the sum of $1,500 with interest at least until February 6, 1908.

"10. If the plaintiff ever deposited with the defendant the sum of $1,500 upon the agreement set forth in the plaintiff's declaration, it was incumbent on the plaintiff to demand the payment of said sum of the defendant within six years after said date, July 6, 1901. As no demand was made within said period, plaintiff cannot recover."

"17. Even if the defendant made such a promise as is set forth in the declaration, to pay the plaintiff $1,500 and interest, yet if both parties understood that such a promise was not a real promise but a mere form of words, the plaintiff cannot recover."

The seventeenth ruling asked for by the defendant was given in substance. The others were refused, subject to exceptions by him.

The defendant also excepted to the following portion of the charge to the jury:

"It becomes important in your inquiry with respect to the conduct of these men and the kind of men they were to determine, among other things, how that estate [of the father of the plaintiff and the defendant] was administered, how it was administered by Fred with respect to the rights of John. There is a provision in this will with respect to the speedy sale of the real estate, its conversion into cash, for the purpose of paying specific legacies to the sisters, for the purpose of creating the trust fund for John, and of liquidating the real estate into cash for the purpose of paying the widow a sum of money in lieu of dower, under the terms of the will. How did Fred execute that trust with respect to John? What was his conduct, speaking of his pocket and speaking of John's pocket, in the execution of this will?

"It is important for you to consider whether this estate was liquidated into cash within the reasonable time of the intent of the will, and what the effect of delay upon Fred's part would be in not so speedily liquidating it; what effect, if any, the delay, if there was any, in the liquidating of this estate had on the trust fund, or had on any interest that might be properly accountable on the principal of that trust fund; where the income, if there was any, of the real estate prior to that time went."

In supplemental instructions given to the jury at the request of the defendant, the judge said: "I said to you early in the charge that in gauging the conduct of Fred you might consider his conduct as executor of the estate of his father. I wish to add to that, that in making that consideration, in weighing his conduct and determining the fairness of it with respect to his brother, you have a right to take into account the fact that Judge Lilley, an attorney, was his co-executor. And you also have the right to take into consideration, for such value as you give it, the statement of Fred on the witness stand that Judge Lilley advised him."

The jury found for the plaintiff in the sum of $2,462.25; and the defendant alleged exceptions, including, besides the exceptions stated above, others which are described in the opinion.

The case was submitted on briefs at the sitting of the court in September, 1913, and afterwards was submitted on briefs to all the justices then constituting the court.

*F. A. Ballou,* for the defendant.

*A. L. Green & F. F. Bennett,* for the plaintiff.

DE COURCY, J. The plaintiff and the defendant are brothers. Their father, John C. Schmidt, died on April 17, 1901, and by his will gave to his wife Abby B. Schmidt one third of all his personal estate, and also from the proceeds of the sales of his real estate such sums as would be due to her as dower, to be computed according to life tables. From the proceeds of such sales he also gave to Fred Schmidt (the defendant) and Alfred F. Lilley the sum of $5,000 in trust, to pay the income in their discretion toward the maintenance of his son John C. Schmidt, Jr. (the plaintiff), the said sum on the decease of the plaintiff to go to his issue, if he should leave any surviving him; otherwise to go to the defendant. The residue of the estate was given to Fred, after the payment of certain bequests that were not payable unless the net proceeds of the sale of the real estate should amount to $16,500.

Abby B. Schmidt died on June 22, 1901, and by her will gave to John C. Schmidt, Jr. (the plaintiff) all the property and estate bequeathed and devised to her by her late husband.

On July 6, 1901, at the First National Bank in Westfield, the plaintiff executed and delivered to the defendant an assignment

of all property bequeathed to him by the will of his mother Abby B. Schmidt. The consideration stated in the transfer was $1,500, and the defendant's check for that amount was given to the plaintiff. The plaintiff cashed the check and thereupon delivered the $1,500 to the cashier, and it was credited to the account of the defendant, Fred Schmidt.

This action was brought to recover the $1,500, on the ground that it was deposited with the defendant upon his promise to keep and care for it for the plaintiff, and to repay it with interest upon request at any time. There was a verdict for the plaintiff. The case is before us on exceptions to the refusal of the trial judge to give certain rulings that were requested by the defendant, and, to the giving of two that were requested by the plaintiff. There are also exceptions to the admission of certain evidence, and to portions of the charge.

1. As to the rulings requested. The evidence on behalf of the plaintiff proved, if believed, that on July 6, 1901, he made a valid transfer of the interest in his father's estate that he acquired under the terms of his mother's will; that the defendant paid therefor the sum of $1,500; that this money was given back to the defendant under his agreement to take care of it for the plaintiff, and to repay it with interest whenever he might ask for it; and that the plaintiff made a demand for the money in February, 1908.

On these facts the plaintiff was entitled to recover unless his claim was barred by the statute of limitations.

On the plaintiff's story the deposit of this money created something more than the ordinary relation of debtor and creditor. The defendant's proposal, to which the plaintiff assented, was: "You had better sign over what is coming to you from your mother's estate, and I will take care of it, the same as I have done other money; as you know, I can take care of it better than you can yourself; and I will pay you interest on it, and any time you want it come to me and I will give it to you." At that time the defendant was trustee under their father's will for the benefit of the plaintiff, and it could be found that at other times the plaintiff had given his brother money to keep for him. Considering not only the language but the conduct of the parties with reference to this transaction, interpreted in the light of their customary dealings with each other, the jury well may have concluded that

the money was to be held by the defendant for an indefinite time, and in trust for the plaintiff. Under these circumstances the statute of limitations would not begin to run in favor of the defendant until the trust was repudiated or otherwise terminated to the knowledge of the beneficiary; which, under the facts in this case, was not until a demand for the money was made in 1908. *Davis* v. *Coburn*, 128 Mass. 377. *Jones* v. *McDermott*, 114 Mass. 400. *Campbell* v. *Whoriskey*, 170 Mass. 63. *Pierce* v. *Perry*, 189 Mass. 332. *Pierce* v. *State National Bank of Boston*, 215 Mass. 18.

What we have said disposes of the defendant's requests numbered 1, 8, 9 and 10. The seventeenth was given in substance and is not argued. The judge was right in refusing to give the sixth, and in giving instead the third request of the plaintiff. Even assuming, as the defendant contends, that the purpose of the assignment of July 6, 1901, was to protect the plaintiff from his creditors, although it would be voidable by the creditors at their election, it was nevertheless valid as between the parties. Further, the agreement on which the plaintiff relies in this action was made subsequent to the assignment, and he is not obliged to rely upon the alleged fraud in order to obtain the relief he seeks. *Harvey* v. *Varney*, 98 Mass. 118. *Lufkin* v. *Jakeman*, 188 Mass. 528.

The exception to the granting of the plaintiff's sixth request is not argued. See R. L. c. 73, § 3.

2. Exceptions were taken to the admission, during the cross-examination of the defendant, of evidence that about two years after the alleged agreement of July 6, 1901, the defendant bought in the real property belonging to his father's estate and did not pay over any money; that he did not buy it directly, but through a third person; that this property was inventoried at $18,100; and that when in July, 1903, he received from the estate the $5,000 trust fund created for his brother (the plaintiff) he did not take over any interest on the same for the two years after their father's death. It is difficult to see the relevancy of this evidence to the narrow issue involved in the case on trial, namely, whether the defendant had paid the plaintiff $1,500 for the latter's interest, as legatee of his mother, of all that was coming to her under the father's will, and had received back from the plaintiff that same money under an agreement to care for it and repay it with interest

on demand. It is now argued that this line of inquiry was proper as bearing on the defendant's contention that it was improbable that he would pay $1,500 for an interest which he as executor knew was really worth nothing. But it seems quite apparent from the record that the necessary effect, if not the real purpose, of the examination on these collateral matters was to show that the defendant had been guilty of maladministration and had cheated the plaintiff in the original settlement of the father's estate. We recognize that much necessarily must be left to the judgment and discretion of the presiding judge, who is in the atmosphere of the trial and responsible for its proper conduct. *Jennings* v. *Rooney,* 183 Mass. 577. But these acts of alleged misbehavior related to matters that were not involved in the narrow issue on trial, and would not be competent, even on cross-examination, for the purpose of discrediting the defendant as a witness. *Commonwealth* v. *Schaffner,* 146 Mass. 512. *American Woolen Co.* v. *Boston & Maine Railroad,* 190 Mass. 152. An additional objection to this line of examination is that in September, 1904, the account of the defendant and his co-executor Mr. Lilley had been allowed and conclusively settled as correct by a decree of the Probate Court, after due notice to the plaintiff.

In view of the fact, admitted by counsel and apparent from the voluminous record, that both sides tried the case "wide open," we should hesitate to grant a new trial on account of this improper admission of evidence if it were clear that the jury were prevented from being led away thereby from the real issue in the case, or from being unfairly influenced by these collateral matters. But we cannot escape the conclusion that those portions of the judge's charge to which the defendant duly excepted, in effect permitted the jury to consider this irrelevant and prejudicial testimony for the very purpose of determining whether the defendant had cheated the plaintiff in his original administration of the father's estate some years before, and, if so, then to give it weight in determining whether he had cheated the plaintiff in the $1,500 transaction that was here in issue. We are of opinion that the evidence and charge to which exceptions were taken constitute harmful error, and for this reason the entry must be

*Exceptions sustained.*