## Klineline, Sr. v. Head.

(Decided November 21, 1924.)

### Appeal from Oldham Circuit Court.

1. Limitation of Actions—Demurrer will Not Raise Defense of Limitation—Limitations Must be Pleaded.—Demurrer will not raise defense of limitation which must be pleaded.

2. Limitation of Actions—Defense of Limitations Need Not be Anticipated, but Must be Controverted when Made.—A litigant need not anticipate defense of limitations, but, when made, must controvert it, usually by pleading responsive to one containing such plea.

3. Limitation of Actions—Petition and Answer Held to Sufficiently Raise Issue of Limitation.—Petition anticipating defense of limitation and alleging discovery of fraud within statutory period, and defendant's answer pleading such defense, held sufficient to raise issue, particularly in view of denial in plaintiff's reply that his cause of action "as set up in the petition" was barred by limitations.

4. Equity—Elements of Defense of "Laches" are Short of Estoppel—Defense May Ripen in Less Time than Applicable Period of Limitations.—Laches is equitable doctrine, elements of which are short of estoppel, and time in which it may ripen is short of the applicable period of limitation.

5. Corporations—Action to Rescind Contract for Purchase of Stock Held Not Barred by Laches.—Action to rescind contract for purchase of stock and to recover purchase price instituted more than five years after purchase, though within twelve months after discovery of fraud, held not barred by laches.

6. Corporations—One Whose Partners Committed Fraud in Sale of Corporate Stock Liable in Suit for Rescission and Recovery of Price.—Where defendant's partners misrepresented the facts, and fraudulently induced plaintiff to purchase worthless stock, defendant is liable, in suit for rescission and recovery of the price, whether purchase was transacted or recommended by him personally or not, and whether he was the owner of the stock or not.

ROBERT T. & WILLIAM J. CROWE for appellant.

EDWARDS, OGDEN & PEAKE, J. BALLARD CLARK and WILSON D. CRABB for appellee Head.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a companion case to that of Head v. Oglesby, 175 Ky. 613. It is against the same defendants as were in that case, and the same relief by cancellation or rescis-

sion and upon the same grounds as sought in that case is prayed for in this one. Briefly, as appears in both cases, it was alleged that appellee, Head, and P. E. Told and S. C. Walker entered into a conspiracy and agreement among themselves to fraudulently dispose of worthless stock of the Southern National Life Insurance Company to plaintiff and others whom they might induce to buy it, and that in pursuance thereof they fraudulently misrepresented the value of the stock and the facts concerning the solvency of the corporation, and thereby deceived plaintiff in this case to purchase fifty shares of the stock at $14.00 per share, aggregating the sum of $700.00. A greater amount of the stock was purchased in the Oglesby case and for which he executed his notes, which were transferred to Head, and that suit sought a cancellation of those notes which the trial court decreed, and its judgment was affirmed on appeal. Plaintiff in this case paid a part of the consideration for the stock he purchased in cash and transferred in payment of the balance certain notes held by him against others but which he later took up and paid Head, to whom they had been transferred, cash therefor. He seeks to rescind the contract whereby he purchased the stock and as an incident thereto to recover the purchase price. The court upon submission of the cause dismissed his petition and he is here on appeal from that judgment.

The first question to be determined is whether the judgment, under the state of the pleadings, should be sustained upon the ground that plaintiff's cause of action was barred by limitations, which most likely was the one upon which the court dismissed the petition, since, as will hereafter appear, we do not think the dismissal could be sustained on the evidence upon the merits. The purchase of the stock by plaintiff was made in the latter part of May or during the month of June, 1913, at his residence on his farm in Oldham county and was negotiated by defendants, Walker and Told, Head not being present. This suit was filed more than five years thereafter, but plaintiff by anticipation averred in his petition that the fraud of which he complained was not discovered by him until "within the last twelve months." That allegation was denied in the answer, as was also true as to all the other affirmative allegations in the petition, and in a separate paragraph it was averred "that more than five years elapsed from the time the contract set out in the petition was entered into

until the institution of that, or any other action thereon, by reason of which the plaintiff's cause of action as set up in the petition is barred by the statute of limitation," etc. In reply to that paragraph of the answer plaintiff admitted "that more than five years elapsed from the time the contract set up was entered into until the institution of this, or any other action thereon, but denies that by reason of which the plaintiff's cause of action *as set up in the petition* is now barred by the statute of limitation;" and under that condition of the pleading it is insisted that the court, as it probably did, should adjudge as a matter of law that the pleading admitted that the five years statute of limitations provided by section 2515 of the statutes applied; but we find ourselves unable to agree therewith.

It would no doubt have been the better practice to have pleaded the time of the discovery of the fraud in avoidance of the five years limitation statute in the reply, as this court has held in numerous cases, among which are: Swinebroad v. Wood, 123 Ky. 664; Coldiron v. Combs, 22 Ky. L. R. 1187; Baker v. Begley, 155 Ky. 234; Mounts v. Charles, 187 Ky. 421, and others referred to in those opinions. A reading of them will reveal (without inserting excerpts therefrom in this opinion), that a demurrer will not raise the question of limitation, but on the contrary it is necessary that the defense be pleaded in order to obtain the benefit of it; that a litigant need not anticipate in his pleading that the defense of limitation will be made and rely on matters in avoidance thereof in the same pleading, and that when limitation is relied on, it must be controverted in some form, the usual method being a denial in a pleading responsive to the one containing the plea. The opinions referred to demonstrate that the present practice extends no further than what we have stated, and we have found no opinion of this court and none has been cited by counsel holding that an anticipatory avoidance of the limitation could and would be given no effect, but only as we repeat that such anticipation *at most* would be informal, but it should not necessarily be discarded therefor, and that the proper practice is to allege the avoidance in a responsive pleading. We are, therefore, unwilling to adopt the common law rule of technical pleading now and herein contended for by appellee in the absence of precedent opinions of this court expressly so declaring. To do so would be subversive of not only the

purpose of pleadings but also of the intention of the legislature in the enactment of our Code of Practice, which was in part to simplify pleading and rules of procedure and to dispense with the extreme technicalities of the common law with reference thereto. The purpose of pleading is to notify the adverse litigant of the facts upon which the pleader intends to rely, and if the pleading as a whole furnishes that information the purpose has been accomplished and the adverse litigant has been accorded all that the practice entitles him to. In this ~case, while plaintiff need not have done so, yet in his petition he served notice on the defendant that the cause of action did not accrue to plaintiff within the five years limitation of the statute, which had elapsed, because the pleader did not discover the fraud upon which he relies and which is the foundation of his action until within twelve months before bringing his suit, from which time he had an additional five years, or until the expiration of ten years from the perpetration of the fraud in which to file his action under the provisions of section 2519 of the statutes. As we have seen, defendant denied that matter of avoidance, which to our minds was sufficient to raise the issue without additional pleading. It will furthermore be noticed that while the reply of plaintiff did not reiterate the matter of avoidance which he had previously stated in his petition, yet he did deny therein that his cause of action *"as set up in the petition"* was barred by the statute of limitations. As set up in the petition, it was that he had not discovered the fraud until about twelve months before filing his action.

But, we are not without authority to support the above expressed views. In the case of Pierce v. Perry, 189 Mass. 332, 75 N. E. 734, and reported in 109 Am. S. R. 637, the identical practice with reference to the bar of plaintiff's right to maintain the action, because of the statute of limitation, was employed by both plaintiff and defendant in their pleadings as was pursued in this case, except in that case there was no reply filed by plaintiffs of any character, and the court held that the matters in avoidance of the statute were properly before the court. In doing so it quoted from the rule as announced by the Supreme Court of the United States in the case of Piatt v. Vattier, 9 Pet. 405, 416, 9 L. Ed. 173, in which that high authority said:

"And the doctrine is now clearly established, that if the statute of limitations is relied on as a

bar, the plaintiff, if he would avoid it by any exception in the statute, must explicitly allege it in his bill, or specially reply to it.''

In treating of the practice with reference to reliance on matters of avoidance of the statute of limitations, the text in 17 R. C. L. 1,000 says: ''And it was early declared by the United States Supreme Court that the doctrine was clearly established that if the statute of limitations is relied on as a bar, the plaintiff, if he would avoid it by any exception in the statute, must explicitly allege it in his bill, or specially reply to it, or amend his bill, if it contains no suitable allegation to meet the bar.'' Numerous cases from as many courts are cited in note 7 to the text. We have been unable to find a case from any court holding to the contrary, and we, therefore, conclude that, although strictly formal practice suggests that the avoidance should be contained in a responsive pleading to the plea of the statute, yet if it is to be found in any of the pleadings of the litigant relying on the avoidance, it will be sufficient although not conforming to the better and most approved rules of procedure.

It is next insisted that the judgment was proper because of the plaintiff's laches; however, there was no plea of laches, but the delay in bringing the action was relied on as an estoppel. Laches is an equitable doctrine, the elements of which are short of an estoppel and the time in which it may ripen is short of the applicable period of limitation, and it is invoked in equity to defeat a tardy litigant on account of whose inexcusable delay after possession of knowledge of the facts his adversary *who has materially changed his situation,* may defeat a recovery or defense because of the other's passiveness if during the delay, and in reliance on such nonaction a change has occurred in the situation and condition of the adversary to such an extent that to uphold the action and to grant the relief would put it beyond the power of the adversary to restore himself to his former situation or the court to restore him *in statu quo.* Preston v. Jeffers, 179 Ky. 384; 21 C. J. 210, and cases in notes. We do not find the facts necessary to the application of that doctrine existing in this case either as to the plaintiff or defendant, Head, and for that reason it may not be invoked by him, and for the same reason we are compelled to hold that the estoppel relied on is not established.

Upon the merits of the case we conclude that but little need be said. The testimony established the fraud relied on practically if not entirely as conclusively as it did in the Oglesby case. Both plaintiff and defendant, Told, testified as to what occurred at plaintiff's house at the time of the sale, which in substance sustained the allegations of the petition. Told also testified to the partnership existing between the three defendants, including the appellee, Head, and that the latter was to finance the partnership in the enterprise of selling the stock, and also to discount notes that might be taken in purchase thereof at a most liberal discount. The stock sold was either that already owned by Head (and he did own more than one thousand shares), or that to be bought from the insurance company and to be paid for by Head by his honoring drafts drawn on him or on his bank by his partners for the amount, and throughout the drive put on by the three defendants the business was conducted in that manner. Head in some instances was furnishing stock that cost him, as he testified in this case, only $6.25 per share, and which the proof indisputably showed was not worth at the time of the sale to plaintiff exceeding five cents on the dollar, and even that in all probability would be consumed in cost incident to insolvency proceedings. Defendant seems to admit in his testimony in this case that in some of the sales made at or about the same time he was a partner, but he says that he was not a partner in the sales made for cash, in which cases he agreed to furnish the stock to Walker and Told at $12.00 per share, and they were to individually have all in excess of that price that they obtained on a resale, and that the sale to plaintiff was a cash transaction, although he paid the larger part of the purchase price by the assignment of notes, which, as we have hereinbefore stated, he later repurchased.

It is insisted, however, that this case differs essentially from the Oglesby case; but the only facts pointed out in support of that contention are (a), that Oglesby telephoned Head before purchasing his stock, and the latter recommended the purchase, and (b), that it was conclusively shown in that case that Head was the owner of the stock. We do not regard the absence of those facts, or either of them, as materially strengthening the defense as to the liability of Head under the proven

facts in this case, for his liability exists, if at all, independently of any recommendation which he might individually make to the purchaser and also independently of whether he did or did not own the sold stock. The gravamen of his liability, if any, in each case was whether he, by himself, or through some one authorized to speak for him, misrepresented the facts and fraudulently procured the purchaser to invest in the worthless stock, when if he had known the true situation he would not have done so. If such facts are established, his liability would exist whether the purchase was transacted or recommended by himself in person or not, and would also exist whether he owned or did not own the stock at the time it was sold, though in this case the stock seems to have been ·owned by defendant from whom Walker and Told procured it. Head also, as he did in the Oglesby case, took plaintiff's stock and exchanged it for other stock in the Inter-Southern Life Insurance Company pursuant to some sort of contemplated merger agreement between the two companies, and which fact of contemplated merger, was also represented to plaintiff by Told and Walker. We can not escape the conclusion, as we could not in the Oglesby case, that Head, Told and Walker were partners in the sale of the stock and that they or some of them as partners of the others fraudulently represented to the purchasers, including plaintiff herein, the facts and thereby caused them to make the purchase resulting in their obtaining practically nothing for something, and which facts furnish the legal support for this character of action.

We, therefore, conclude that the court erred in dismissing the petition as against Head (it having not disposed of the case as to the other two defendants), and the judgment is reversed with directions to rescind the contract and to render a judgment against him for the purchase price which plaintiff paid for the stock, with interest from the time he paid it, and for proceedings consistent with this opinion.