KAREN NELSON MOORE, Circuit Judge.
 

 Tully Construction Company, Inc. (“Tully”) appeals the district court’s order affirming the bankruptcy court’s declaratory order and grant of summary judgment requiring Tully to honor a post-petition loan commitment (“Loan Commitment”) to Cannonsburg Environmental Associates, Ltd. (“CEA”).
 
 [1]
 
 Tully also appeals the district court’s order consolidating Tuny’s two appeals from the bankruptcy court. For the following reasons, we affirm the district court’s decision in all respects.
 

 t
 

 CEA, a Kentucky limited partnership that managed a landfill in Kentucky, filed under Chapter 11 of the Bankruptcy Code. As a condition for retaining control as debtor in possession, CEA posted and the bankruptcy court approved the Loan Commitment, in which Tully promised to loan CEA money to pay “for the cost of improvements and expenses relating to complying with the Interim Standards, including, not be [sic] way of limitation, constructing a liner....” The Loan Commitment identified a particular line of credit as Tully’s source of financing.
 

 In July 1992, CEA made a draw request under the Loan Commitment, which Tully refused to honor because it believed the purpose of the Loan Commitment had been fulfilled. CEA subsequently withdrew the request. In May 1993, several months after the bankruptcy court appointed a trustee for CEA, the Trustee made another draw request, which Tully again refused. In June 1993, the Trustee filed a Motion to Compel Performance, seeking,
 
 inter alia,
 
 an order that the Trustee could enforce the Loan Commitment against Tully. The Trustee took discovery, and the bankruptcy court held an evidentiary hearing in August 1993. On September 7, 1993, the bankruptcy court ruled that the Trustee could enforce the Loan Commitment against Tully but declined to order specific performance. Tully appealed this declaratory order to the district court on September 17. On September 14, the Trustee filed an adversary proceeding against Tully seeking a judgment based on the declaratory order. Tully answered the adversary complaint on October 15, raising affirmative defenses of fraud in the inducement and mistake. Three days later, on October 18, the Trustee filed a motion for summary judgment.
 

 On November 18, Tully moved to stay the adversary proceeding pending the resolution
 
 *1264
 
 of the appeal of the declaratory order, arguing that a reversal would render the adversary proceeding moot. Tully also responded to the Trustee’s motion for summary judgment, claiming that there were material issues of fact in dispute regarding fraudulent inducement and mistake and, alternatively, requesting a continuance in order to conduct discovery. In particular, Tully sought to depose Alan Truesdale, an attorney and officer of CEA, who Tully contends promised to protect Tully’s interests in drafting the Loan Commitment and made misrepresentations about the scope and repayment of the loan. Tully argued that “because of the flurry of activity in the case,” it had not been able to depose Truesdale. In November 1993, the bankruptcy court denied Tully’s motion to stay and entered summary judgment against Tully. Tully appealed the summary judgment order in the district court. In April 1994, the district court sua sponte consolidated Tully’s appeals and affirmed the bankruptcy court’s declaratory order and grant of summary judgment.
 

 II.
 

 Tully argues that the bankruptcy court erred by granting the declaratory order because the Trustee should have filed an adversary proceeding under Fed. R. Bankr.P. 7001
 
 [2]
 
 rather than a motion under Fed. R. Bankr.P. 9014
 
 [3]
 
 since the Trustee sought to recover money and declaratory relief.
 
 See Dahlquist v. First Nat’l Bank (In re Dahlquist),
 
 33 B.R. 101, 103 (Bankr.D.S.D.1983) (dismissing motion for injunctive relief because action should have been filed as an adversary proceeding under Rule 7001). The structure of the Federal Rules of Bankruptcy Procedure clearly mandates an adversary proceeding in this case, where the Trustee requested, at a minimum, a declaratory order that it could enforce the Loan Commitment. Although we believe that an adversary proceeding should have been filed instead of a motion in a contested matter, this error constitutes harmless error.
 
 See
 
 Fed. R. Bankr.P. 9005 (harmless error rule incorporating Fed.R.Civ.P. 61).
 

 Tully claims that by filing a motion rather than an adversary complaint, the Trustee deprived Tully of the opportunity to conduct discovery, including the opportunity to depose Truesdale. However, although Tully failed to seek discovery before the hearing on the Motion to Compel,
 
 [4]
 
 the same discovery methods are available under the rules governing contested matters as for adversary proceedings.
 
 See
 
 Fed. R. Bankr.P. 9014 (providing that “unless the court otherwise directs,” the procedures relating to discovery and depositions apply in contested matters and that the court may also apply any additional rules from Part VII, which governs adversary proceedings); 9
 
 Collier on Bankruptcy
 
 ¶ 9014.05 (15th ed.1995). Furthermore, Tully was offered the opportunity to preserve Truesdale’s testimony by avowal after' the hearing but failed to do so. Therefore, in light of the failure to take advantage of the opportunity for discovery, Tully has not and cannot demonstrate that it has been prejudiced by the Trustee’s failure to file an adversary proceeding.
 
 See Trust Corp. v. Patterson (In re Copper King Inn, Inc.),
 
 918 F.2d 1404, 1406-1407 (9th Cir.1990) (failure to hold adversary proceeding to determine validity of security interest was not reversible error where court held de facto adversarial hearing and appellant made no contemporaneous objection);
 
 In re Orfa Corp.,
 
 170 B.R. 257, 275-76 (E.D.Pa.1994) (error in initiating matter by motion rather than by complaint was harmless because no prejudice
 
 *1265
 
 was shown);
 
 United States v. Lewis (In re Lewis),
 
 142 B.R. 952, 955 (D.Colo.1992) (refusing to “enshrine form over substance” in the absence of demonstrable prejudice from filing a motion rather than a formal adversary proceeding). Accordingly, although the Trustee should have filed an adversary complaint instead of a motion, this error was harmless.
 

 III.
 

 In addition to arguing that the Trustee should have filed an adversary proceeding, Tully contends that the Trustee cannot enforce the Loan Commitment because he does not have standing, the Loan Commitment expired when the bank terminated Tully’s line of credit or when its purpose had been fulfilled, and the Trustee is barred by laches. We find each of Tully’s assertions without merit.
 

 A.
 

 Tully’s standing argument rests on two theories. Tully’s first theory, that the Trustee was not a third party beneficiary under the agreement, is misplaced because the Trustee sought to enforce the contract on behalf of the bankruptcy estate, not in his own name.
 
 See
 
 17A Am.Jur.2d, Contracts § 435, at 458 (1991) (third party beneficiary doctrine allows a third person,
 
 “in his own right and name,
 
 [to] enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration.”) (emphasis added); 11 U.S.C. § 323(a) (“The trustee in a case under this title is the representative of the estate.”). Thus, the trustee did not attempt to invoke third party beneficiary status.
 

 Tully’s second theory rests on the applicability of section 365(c)(2) of the Bankruptcy Code, which provides that:
 

 The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
 

 (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor;....
 

 11 U.S.C. § 365(c)(2). However, section 365(c)(2) applies only to
 
 pre-petition
 
 loans and therefore is not applicable to the Loan Commitment, which is a post-petition instrument.
 
 [5]
 

 See Ballas v. Revco D.S., Inc. (In re Revco D.S., Inc.),
 
 No. 93-3597, 1994 WL 376884, at *2 (6th Cir. July 18, 1994) (unpublished per curiam) (finding that “[s]ection 365 does not apply to postpetition contracts or leases negotiated by the debtor-in-possession on behalf of the bankruptcy estate.... [I]t would create a financial disincentive for creditors to deal with the debtor-in-possession because holders of administrative claims are paid in full, whereas holders of unsecured claims usually receive a smaller distribution.”) (citing
 
 In re IML Freight, Inc.,
 
 37 B.R. 556, 558-59 (Bankr.D.Utah 1984) (section 365 “does not apply to post-petition contracts negotiated by a trustee or a debtor-in-possession on behalf of the bankruptcy estate.”)).
 
 See also Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.),
 
 945 F.2d 1089, 1092 (9th Cir.1991) (stating that “§ 364 governs post-petition credit, while § 365 governs the continuation, post-petition, of pre-petition contractual relations,” and “[p]ost-petition financing arrangements are ... governed solely by § 364”) (quoting and adopting portion of the Bankruptcy Appellate Panel in
 
 In re Sun Runner Marine, Inc.,
 
 116 B.R. 712 (9th Cir. BAP 1990), which was affirmed in part
 
 *1266
 
 and vacated in part on other grounds);
 
 [6]
 

 In re The Leslie Fay Companies, Inc.,
 
 168 B.R. 294, 300 (Bankr.S.D.N.Y.1994) (“There are cases which have addressed the question of whether section 365 applies to postpetition agreements; the learning from these cases is that contracts ... entered into postpetition are not subject to rejection under section 365.”); 2
 
 Norton Bankruptcy Law and Practice 2d
 
 § 39:1, at 5 (1994) (section 365 “applies to unexpired leases and contracts found to be ‘executory’ to which the debtor became a party prior to the filing of the bankruptcy petition.”).
 

 Although section 365 does not explicitly state that it does not apply to post-petition loans, this interpretation is clearly supported by the purpose of section 365(c)(2) and its relationship with section 364. Section 365(c)(2) is designed “to protect a party to a contract from being forced to extend cash or a line of credit to one who is a debtor under the Bankruptcy Code.” 1
 
 Collier Bankruptcy Manual
 
 ¶ 365.02[2], at 14-15 (3d ed.1995). Thus, the trustee “may not force a creditor into the untenable position of having to extend straight cash to an insolvent debtor.”
 
 Id.
 
 at 15.
 
 See also
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 348,
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6304 (“The purpose of [section 365(c) ], at least in part, is to prevent the trustee from requiring new advances of money or other property. The section permits the trustee to continue to use and pay for property already advanced, but is not designed to permit the trusee [sic] to demand new loans or additional transfers of property under lease commitments.”); 2
 
 Norton Bankruptcy Law and Practice 2d
 
 § 39:19, at 58-59 (1994) (section 365(c)(2) “fully protects the third party lender suddenly faced with a credit agreement involving a debtor in bankruptcy, where the initial agreement was based at least in part on the financial strength of the debtor.”). Such protection would be unnecessary where the parties execute a post-petition loan contract knowing the debtor has filed for bankruptcy.
 

 The time limits for assuming or rejecting contracts under section 365 further support the conclusion that section 365(c)(2) does not apply to post-petition loans. In chapter 7 cases, the trustee must assume a contract or lease within sixty days
 
 “after the order for relief”
 
 unless the court, for cause, extends the period of time; otherwise, the contract or lease will be deemed rejected. 11 U.S.C. § 365(d)(1) (emphasis added). In cases under chapter 9, 11, 12, or 13, “the trustee may assume or reject an executory contract ... any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.” 11 U.S.C. § 365(d)(2). The legislative history for subsection (d) indicates that its purpose is to “prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.” H.R.Rep. No. 595, 95th Cong., 2d Sess. 348,
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6304. Thus, the existence of a time limit commencing with the order for relief and the theory that the court may limit the time in order to inform parties of their status in relation to the bankruptcy estate suggest that section 365 applies only to pre-petition contracts because parties who execute a contract after the debtor has filed for bankruptcy presumably know their status vis-a-vis the estate.
 

 Furthermore, section 364, which governs post-petition financing agreements, allows the bankruptcy court to authorize the trustee to obtain credit and incur debt on behalf of the bankruptcy estate. 11 U.S.C. § 364.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 346,
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6303 (stating that section 364 “governs all obtaining of credit and incurring of debt by the estate”); 2
 
 Norton Bankruptcy Law and Practice 2d
 
 § 39:19, at 59 (1994) (“[P]ostpetition financial arrangements are subject to the provisions of Code § 364 concerning obtaining credit.”); 1
 
 Collier Bankruptcy Man
 
 
 *1267
 

 ual
 
 ¶ 364.01, at 1 (3d ed. 1995) (“Section 364 now governs all obtaining of credit and incurring of debt by the estate, whether by the trustee ... or by the debtor in possession_”). Section 364 provides certain incentives that a trustee or debtor in possession may offer, with court approval, to induce potential lenders to undertake the risks involved in providing post-petition financing to a bankruptcy estate.
 
 Sun Runner,
 
 945 F.2d at 1092. “These incentives include granting the lender [when necessary under statutorily defined circumstances] an administrative expense priority under § 364(b), a ‘super-priority’ claim under § 364(c)(1), or a lien on unencumbered estate assets under § 364(c)(2) or (3), on account of the
 
 post-petition
 
 credit extended.”
 
 Id.
 
 at 1092-93 (emphasis in original). Furthermore, section 364(d) provides that, under appropriate circumstances and after notice and a hearing, the court may authorize the obtaining of credit secured by a lien on encumbered property that is senior or equal to any existing lien on the property. 11 U.S.C. § 364(d).
 
 See also In re Cardinal Indus., Inc.,
 
 146 B.R. 720, 732 (Bankr.S.D.Ohio 1992) (citing
 
 Sun Runner
 
 with approval).
 

 Tully further argues that a lender’s' agreement to lend money to one entity does not indicate that the lender would be willing or should be forced to lend money to a successor entity with different management, objectives, and resources. Although this argument might be compelling if we were dealing with a pre-petition loan, the Loan Commitment is a post-petition loan that explicitly provides as a “condition precedent” that it was subject to approval of the bankruptcy court under 11 U.S.C. § 364, and the bankruptcy court specifically authorized the debt- or in possession to obtain post-petition financing from Tully pursuant to section 364(d). Therefore, the Trustee stands in the debtor’s shoes and has all the rights, duties, and powers of the debtor in possession. Furthermore, from a practical standpoint, if we accepted Tully’s argument that the Trustee cannot enforce a post-petition loan agreement executed by the debtor in possession, the bankruptcy estate would be back to square one every time a bankruptcy court appoints a trustee after the debtor in posses-sion has negotiated financing for the estate. Accordingly, the Trustee has standing to enforce the Loan Commitment.
 

 B.
 

 We reject Tully’s argument that the Loan Commitment had expired before the Trustee’s draw request because its purpose had been fulfilled and Tully’s bank had terminated its line of credit. The Loan Commitment provides that the proceeds were “solely for the purpose of paying for the cost of improvements and expenses related to complying with the Interim Standards....” Thus, Tully’s argument that the Loan Commitment’s purpose had been fulfilled when CEA received temporary authorization to operate two of the three “cells” of the landfill ignores the language of the Loan Commitment, which explicitly covers a broader purpose. Similarly, Tully’s contention that the Loan Commitment expired when the bank terminated Tully’s line of credit misapprehends the reference to Tully’s line of credit in the Loan Commitment. The Loan Commitment specifically identifies Tully’s source of funding in a ‘Warranty of Lender” clause, in which Tully assured CEA that Tully could perform its obligations. This provision did not make a particular source of credit a condition or prerequisite to CEA’s right to enforce the contract.
 

 C.
 

 Tully alternatively asserts that the Trustee’s motion should have been denied based on laches because Tully relied to its detriment on the Trustee’s delay in making the draw request for nearly one year from the date of the Loan Commitment and approximately nine months from the date CEA received temporary authorization to operate two of the “cells” of the landfill. “The defense of laches ‘requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.’ ”
 
 Kansas v. Colorado,
 
 — U.S. -, -, 115 S.Ct. 1733, 1742, 131 L.Ed.2d 759 (1995) (quoting
 
 Costello v. United States,
 
 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)).
 
 See
 
 
 *1268
 

 also Wells v. United States Steel & Carnegie Pension Fund, Inc.,
 
 950 F.2d 1244, 1250 (6th Cir.1991) (applying Kentucky law of laches, which “requires showing an unreasonable delay by one party which prejudiced the other party”) (citing
 
 Klineline v. Head,
 
 205 Ky. 644, 266 S.W. 370, 372 (1924)). However, “[rjemaining passive does not ordinarily deprive one of his legal rights, unless in addition thereto he does some act to induce or encourage another to alter his condition, and by reason thereof it becomes unconscionable to award the claimed rights.”
 
 Wisdom’s Adm’r v. Sims,
 
 284 Ky. 258, 144 S.W.2d 232, 236 (1940). Tully argues that it was prejudiced by the Trustee’s delay because Tully, believing the purpose of the Loan Commitment had been fulfilled, had allowed its line of credit to expire. Tully further argues that CEA’s silence after it withdrew its July 1992 draw request confirmed that no further obligation existed under the Loan Commitment.
 

 Tully’s laches argument must fail for several reasons. First, the purpose of the Loan Commitment had not been fulfilled when Tully allowed its line of credit to expire. Second, neither the Trustee nor CEA committed any affirmative act that induced or encouraged Tully to believe that the Loan Commitment had been terminated. Third, Tully did not show that any delay was unreasonable. Thus, we agree with the bankruptcy court’s finding that the Trustee’s draw request is not barred by laches.
 

 IV.
 

 The bankruptcy court excluded evidence proffered by Tully based on the parol evidence rule, including exhibits relating to prior drafts of the Loan Commitment and certain testimony from Alan Truesdale and from Tom Tully and Peter Tully, both vice presidents of Tully, by which Tully sought to prove fraudulent inducement and mistake. Tully preserved Peter Tully’s testimony by avowal, but did not call Truesdale for any avowal testimony. Tully argues that the bankruptcy court erred by excluding such evidence because parol evidence is admissible to show fraudulent inducement and mistake.
 
 See, e.g., Hanson v. American Nat’l Bank & Trust Co.,
 
 865 S.W.2d 302, 308 (Ky.1993); Restatement (Second) of Contracts § 214(d), at 132-33 (1981) (“Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish ... illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause_”). The thrust of Tully’s argument is that Truesdale, an officer of CEA, assured Tully in writing that he had drafted the Loan Commitment to protect Tully’s interests, thereby inducing Tully’s officers to rely on his representations to their detriment.
 

 The Loan Commitment is a three-page contract containing clear, unambiguous language. Therefore, parol evidence could not be admitted to vary and/or contradict its clear terms.
 
 See Friction Materials Co. v. Stinson,
 
 833 S.W.2d 388, 391 (Ky.Ct.App.1992). Furthermore, even though admissible to show fraud or mistake, any error in refusing to admit the parol evidence is harmless because Tully did not present sufficient evidence to state a prima facie case of fraud or mistake.
 
 See Moore, Owen, Thomas & Co. v. Coffey,
 
 992 F.2d 1439, 1444 (6th Cir.1993) (listing elements of fraud claim under Kentucky law, which include: “(1) a material misrepresentation; (2) which is false; (3) which was known to be false, or made recklessly; (4) made with inducement to be acted upon; (5) which is acted upon in reliance thereon; and (6) causes injury.”). Even if Truesdale misrepresented to Tully that the Loan Commitment only covered the installation of a liner or protected Tully’s interests generally, the plain language of the instrument provides for a much broader scope for use of the loan proceeds. We must presume that Peter Tully, who is an attorney, read the agreement he signed on Tully’s behalf, and therefore Tully cannot show that it reasonably relied on any misrepresentations by Truesdale. Accordingly, we find that the bankruptcy court properly excluded the parol evidence Tully sought to introduce or, at a minimum, did not commit reversible error by excluding it.
 

 V.
 

 Tully’s remaining claims, which relate to the summary judgment order, are
 
 *1269
 
 similarly without merit. First, we reject Tully’s argument that the bankruptcy court erred by granting summary judgment, because Tully merely reiterates its argument that it did not have adequate time to conduct discovery. Second, Tully’s claim that the district court denied it the right to brief the issues in the second appeal is likewise without merit. The district court entered a briefing schedule for the summary judgment appeal, but the parties never filed briefs because they apparently relied on a proposed order to stay the summary judgment appeal .that the parties submitted but the district court never entered. Third, the district court did not abuse its discretion by consolidating the two appeals. Although neither party requested consolidation, courts are routinely granted authority to consolidate related matters.
 
 See
 
 Fed. R. Bankr.P. 8018 (providing that “the district court or the bankruptcy appellate panel may regulate its practice in any manner not inconsistent with these rules”); Fed.R.Civ.P. 42 (giving courts broad authority to consolidate actions “involving a common question of law or fact ... pending before the court” and to “make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay”); Fed. R.App. P. 3(b) (providing that the court may consolidate appeals on its own motion). Although not identical, the issues presented in the two appeals are essentially the same, and any prejudice to Tully results from its failure to file a brief, not from the district court’s consolidation.
 

 Finding no reversible error, we AFFIRM the decisions of the bankruptcy court and the district court in all respects.
 

 [1]
 

 . The district court reversed and remanded the summary judgment order for modification to reflect that the award is an advance in favor of CEA to be repaid pursuant to the Loan Commitment. Except for this modification, the district court affirmed the grant of summary judgment.
 

 [2]
 

 . Fed. R. Bankr.P. 7001 provides:
 

 An adversary proceeding is governed by the rules of this Part VII [Fed. R. Bankr.P. 7001-7087]. It is a proceeding (1) to recover money or property, ... (7) to obtain an injunction or other equitable relief, ... [or] (9) to obtain a declaratory judgment relating to any of the foregoing....
 

 [3]
 

 . Fed. R. Bankr.P. 9014 provides:
 

 In a contested matter in a case under the Code • not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.
 

 [4]
 

 . Tully conceded at oral argument that it did request documents from the Trustee but stated that none were produced. Apparently, Tully did not follow up on its request before the hearing.
 
 See
 
 J.A. at 46.
 

 [5]
 

 . We note that we are not faced with the issue of cross-collateralization, whereby a lender obtains a security interest in assets of the debtor not only for a post-petition loan, but also as collateral for pre-petition debt.
 
 E.g., In re Saybrook Manufacturing Co.,
 
 963 F.2d 1490, 1491-92, 1495-96 (11th Cir.1992) (holding that cross-collateralization is an impermissible method of post-petition financing because it is not authorized under 11 U.S.C. § 364 and is contrary to the fundamental priority scheme of the Bankruptcy Code). We express no opinion about the use of cross-collat-eralization under the Code and limit our holding to the type of loan involved here, which did not secure or relate to any pre-petition extension of credit.
 

 [6]
 

 .
 
 Sun Runner
 
 dealt with the question whether a lender could consent to the post-petition assumption of a financial accommodation contract. The Ninth Circuit held that section 365(c)(2) prohibits such an assumption because that section is
 
 designed
 
 to protect not only the interests of the parties to the executory contract in question, but also the interests of other creditors of the debtor. 945 F.2d at 1093-94.