**In re SUDBURY, INC., Debtor.**

**Bankruptcy No. 92–10148.**

United States Bankruptcy Court, N.D. Ohio.

May 11, 1993.

G. Christopher Meyer, Ralph Brubaker, Squire, Sanders & Dempsey, Cleveland, OH, for debtor.

Jeffrey M. Sherman, Lawrence D. Mungin, Katten Muchin Zavis & Dombross, Washington, DC, for Nat. Union Fire Ins. Co. of Pittsburgh, Pa.

Forrest A. Norman, Gary L. Nicholson, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Continental Ins. Co.

Jeffrey S. Gray, Ulmer & Berne, Cleveland, OH, for Unsecured Creditors' Committee.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

On July 2, 1992, Sudbury, Inc., the Debtor in this chapter 11 case, filed a motion requesting a declaration that its insurance policies ("Policy" or "Policies") issued by National Union Fire Insurance Company of Pittsburgh, Pa. and The Continental Insurance Company ("Insurer(s)") and the related retrospective premium agreements ("Premium Agreement(s)") are not executory contracts under section 365 of the Bankruptcy Code or, in the alternative, permitting the Debtor to reject the Premium Agreements. In subsequent pleadings the Insurers urged that the Policies and Premium Agreements are executory contracts under section 365 and that their retrospec-

tive premium claims, totaling several million dollars, are entitled to administrative expense priority rather than the status of general unsecured claims.

The Court confirmed the Debtor's plan of reorganization by order entered August 18, 1992. On the same day the Court also entered an agreed order among the Debtor and the Insurers providing that despite confirmation of its plan the Debtor could reject the Policies and Premium Agreements if they were determined to be executory contracts under section 365. The parties have extensively briefed their positions. On March 5, 1993, the parties filed stipulations of fact for the Court's use in ruling on the Debtor's motion ("Stipulations").

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). This memorandum sets forth the Court's findings of fact and conclusions of law pursuant to rule 7052 of the Federal Rules of Bankruptcy Procedure.

*Background*

The parties have stipulated that the Policies provide occurrence-based coverage; that is, the Insurers adjust, administer and pay claims arising from occurrences that took place during the policy period. Each of the Policies expired or was terminated prior to the filing of this case. Therefore, each policy period covers only prepetition occurrences. Except for two automobile liability Policies issued by Continental, the other Policies are standard retrospective premium policies; that is, the premium owing the Insurer is adjusted annually based upon claims experience. For each policy year during which the Policies were in effect, the Debtor executed concurrently with the issuance of the Policy a Premium Agreement providing for payment of annual retrospective premiums. Under a standard retrospective premium insurance policy, an initial premium, called a deposit premium, is estimated and paid. After expiration of the policy period, an audit adjustment is made. Thereafter, annual retrospective premium adjustments are calculated based upon actual claims experience for

the policy period. In addition, there is a maximum premium cap; the insured is not obliged to pay premiums to the insurer after the cap is reached. Under Debtor's National Union retrospective premium Policies retrospective premiums are still outstanding. Under Debtor's Continental retrospective premium Policies audit adjustments and retrospective premiums are outstanding.

Continental's two automobile liability Policies are fixed premium insurance policies under which the Debtor maintained responsibility for payment of specified per occurrence and aggregate deductible amounts. The Debtor has deposited funds with Continental and procured a letter of credit for the benefit of Continental to assure payment of these deductibles under these Policies.

All of the Policies have clauses ("Bankruptcy Clauses") which provide that the Debtor's insolvency or bankruptcy will not relieve the Insurer of its obligations under the Policy. Both Insurers' workers compensation Policies contain identical Bankruptcy Clauses: "Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance policy after an injury occurs." The National Union general liability Bankruptcy Clause provides: "Bankruptcy or insolvency of the insured or the insured's estate shall not relieve the company of any of its obligations hereunder." The National Union and Continental automobile Policies contain substantially identical Bankruptcy Clauses.

All of the Policies contain "notice" and "cooperation" provisions. According to the Stipulations, these provisions ("Cooperation Clauses") must be satisfied or the Insurer may not be obliged to pay an otherwise covered claim. The Cooperation Clauses impose the following obligations on the Debtor: (1) giving the Insurer timely notice of a claim, (2) providing the Insurer with fair, frank and substantially full disclosure of information reasonably demanded by the Insurer to enable it to prepare for or determine whether there is a genuine defense to a claim, (3) cooperating in the defense of a

claim by, *inter alia,* testifying or attending trial, cooperating and responding to discovery and in the investigation, negotiation, settlement and litigation of the claim, (4) obtaining the consent of the Insurer if the Debtor settles with a claimant, and (5) protecting and preserving the Insurer's right of subrogation with respect to a claim.

## Analysis

A number of cases have considered whether a debtor's obligation to pay retrospective premiums coupled with the insurer's obligation to pay claims based on prepetition occurrences constituted an executory contract under section 365 of the Bankruptcy Code. So far as appears from the parties' briefs and the Court's research, the cases have held without exception that a debtor's obligation to pay retrospective premiums did not make an insurance policy executory. *Texscan Corp. v. Commercial Union Insurance Cos. (In re Texscan Corp.),* 107 B.R. 227 (9th Cir. BAP 1989), *aff'd,* 976 F.2d 1269 (9th Cir.1992); *Firearms Import and Export Corp. v. United Capitol Insurance Co. (In re Firearms Import and Export Corp.),* 131 B.R. 1009 (Bankr.S.D.Fla.1991); *In re Wisconsin Barge Line, Inc.,* 76 B.R. 695 (Bankr. E.D.Mo.1987); *In re Placid Oil Co.,* 72 B.R. 135 (Bankr.N.D.Tex.1987). These courts generally invoked the Countryman definition of executory contract in concluding that the policy was not an executory contract under section 365.

Professor Countryman defined an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy,* Part I, 57 Minn. L.Rev. 439, 460 (1973). The Countryman definition has been employed in the Sixth Circuit. *See Terrell v. Albaugh (In re Terrell),* 892 F.2d 469 (6th Cir.1989); *In re Jolly,* 574 F.2d 349 (6th Cir.1978), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978).

The courts that have considered retrospective premiums have generally concluded that insurance policies and related obligations to pay retrospective premiums were not executory contracts under the Countryman definition because the policy period had expired and there was therefore nothing to assume, and/or because the insurer's indemnity obligation was not conditioned upon the debtor's payment of retrospective premiums.

This Court too concludes that the Debtors' retrospective premium obligation does not make the Policies executory contracts which may be assumed or rejected under section 365. Although the Insurers' obligation to pay insured claims that arose during the policy period, and the Debtor's obligation to pay retroactive premiums, are both executory, under the ordinary meaning of that term, since neither has been performed, this does not constitute them an executory contract under the *Countryman* definition. That definition requires not only executory obligations but obligations whose nonperformance would excuse performance by the other party.

The obvious purpose of the Bankruptcy Clauses was to make clear that the Debtor's failure to pay retrospective premiums because of the Debtor's bankruptcy or insolvency would not excuse the insurer's payment of claims arising out of occurrences during the policy period. See *Texscan, supra.* The Insurers appear to acknowledge this disconnect. They do not argue that their obligations to provide insurance coverage can be avoided by the Debtor's failure to pay the retrospective premiums.

Section 365 is designed to give the trustee the option of assuming contracts where performance by a third party will benefit the estate or to forego the third party's performance where the benefit to the estate will be less than the cost. If the contract is assumed, the third party must perform and the debtor must render at full value the debtor's bargained for performance on which the third party's performance was conditioned. If the contract is rejected, the third party is not obligated to

perform but has only a prepetition claim for its damages.

In this case, however, the Insurers agreed in the Bankruptcy Clauses that their obligations to pay covered claims were not conditioned upon the Debtor's full payment of retrospective premiums. Therefore assumption of the Retrospective Premium Agreements would provide the estate no benefit; it would impose only a gratuitous cost and would waste estate assets.

Although the Debtor's rejection of the Policies might in theory reduce the amount of the Insurers' prepetition claims for retrospective premiums, it would be irresponsible. Such rejection, if permitted, would deprive claimants under the Policies of payment in order to increase, however marginally, the dividend to other prepetition creditors. Such rejection is hardly consistent with the intent of the Bankruptcy Clauses to assure payment to claimants despite Debtor's bankruptcy.

The Insurers also argue that the Debtor's obligations under the Cooperation Clauses make the Policies executory contracts under section 365. The Insurers have cited a number of Ohio cases for the proposition that the Debtor's failure to cooperate may be a defense against the Insurers' obligation to pay claims. In *Miller v. Jones,* 140 Ohio St. 408, 24 O.O. 415, 45 N.E.2d 106 (1942), the Ohio Supreme Court held that the insured's confession of judgment, despite having a defense and over the insurer's protest, breached the insured's duty to cooperate under its liability policy. In *Storer v. Ocean Accident & Guarantee Corp.,* 80 F.2d 470 (6th Cir. 1935), the court held that the insured had breached the cooperation clause in his liability policy where he gave false testimony to facilitate a friend's damage recovery from a negligence claim based upon an Ohio automobile accident.

Debtor concedes that the Insurers' obligation to pay a covered claim is conditioned on the Debtor's compliance with its obligations in respect of such claim under the Cooperation Clauses. Debtor argues, however, that the Cooperation Clauses should be characterized as conditions, not as obligations within the meaning of the *Countryman* definition. It also argues that however these obligations are characterized they are essentially ministerial and are not the sort of obligation intended to trigger operation of section 365.

So far as appears, no reported case has focused as sharply on the insured's obligations to cooperate under its insurance policy as have the Insurers in their briefs. However, the only cases that refer to the insured's duty to cooperate have held that the insurance policies were not executory contracts under section 365. *Columbia Casualty Co. v. Federal Press Co. (In re Federal Press Co.),* 104 B.R. 56 (Bankr. N.D.Ind.1989); *In re Firearms Import & Export Corp. v. United Capitol Insurance Co.,* 131 B.R. 1009 (Bankr.S.D.Fla.1991). No reported case has held that the insured's obligation to cooperate would transmute the policy into an executory contract under section 365.

The Insurers' state law cases do not establish that the Insurers' obligations under the Policies may be voided because of the Debtor's failure to cooperate. They establish only that an Insurer may have a defense against a claim where the Debtor does not cooperate. Therefore, Debtor's failure to cooperate as to any one claim would not meet the Countryman definition since it would not excuse the Insurer's performance in respect of other claims.

Whether the Debtor's duties under the Cooperation Clauses are characterized as conditions or ministerial obligations, they are of a different character than bargained for consideration. Obviously an insurance company does not bargain for the Debtor's cooperation in handling claims. It bargains for premiums. The Cooperation Clauses merely reflect the fact that the insurer's ability to defend claims may require the insured to furnish information relating to the claim and not to prejudice the insurer's defense. For these reasons, these clauses are generally found in insurance policies, see 44 Am.Jur.2d *Insurance* § 1430 *et seq.,* and constitute part of the policy's boilerplate. There is no suggestion in the record

that the Debtor has or will fail to comply with these ancillary obligations. In fact the Debtor's arrangements to fund its obligation to pay deductibles under the Continental automobile Policies indicate that the Debtor intends to comply with the conditions necessary for the Insurers to respond to covered claims.

The Insurers contend, however, that even ministerial obligations are enough to make a contract executory under the *Countryman* definition and Sixth Circuit precedent. In *In re Terrell, supra,* the Sixth Circuit held that a land installment agreement was an executory contract under section 365 because the debtor was obliged to make payments and the seller was obliged to execute and deliver a deed. The court rejected the debtor's argument that the seller's obligation was merely ministerial and therefore the installment agreement should be denied executory contract status under section 365. According to the debtor, the installment agreement should be deemed a mortgage of the property covered by the agreement so that the debtor could reduce the secured debt to the value of such property under section 506(a) of the Code. The court noted that under state law, however, mortgages and installment agreements conferred quite different remedial rights on their holders. Therefore, permitting the transformation of the installment agreement into a mortgage by calling the seller's obligation ministerial and denying executory contract status to the agreement, would have eliminated rights and remedies otherwise available to the seller under state law.

In this case, however, denying executory contract status to the Policies would not impair the Insurer's rights or remedies. The Debtor has stipulated that the Debtor's failure to cooperate in respect of a claim could vitiate coverage as to such claim. Therefore, not treating the Policy as an executory contract will not affect the Insurers. If the Debtor fails to cooperate as to any claim, the Insurers will have a defense to that claim whether or not the Debtor "assumes" the Policy.

The Sixth Circuit has made clear that the Countryman definition does not preclude other inquiry in applying section 365.

This [Countryman] definition was found by this court to be helpful but not controlling in the resolution of what is an executory contract. *In re Jolly,* 574 F.2d 349 (6th Cir.1978). Rather, this court suggested that in determining whether the contract is executory, we should work backward from an examination of the purposes to be accomplished by rejection and, if they have already been accomplished, then the contract cannot be said to be executory.

*Rieser v. Dayton Country Club Co. (In re Magness),* 972 F.2d 689, 694 (6th Cir.1992).

In this case rejection of the Policies is not a viable or even a rational alternative. Its only effect would be to relieve the Debtor from obligations under the Cooperation Clauses. The Debtor has not requested such relief. Rejection would confer a windfall on the Insurers and an economic loss on claimants that the Bankruptcy Clauses were designed to avoid. For this reason at least one court has held that rejection would be improper even if the policy were deemed an executory contract. *In re Federal Press Co., supra.*

Assumption of the Policies would be equally meaningless in this case. The Debtor has acknowledged in the Stipulations that observance of its obligations under the Cooperation Clauses is a condition to the Insurers' duty to pay claims. This is the only "assumption" relevant to the Cooperation Clauses or which the Insurers need to protect their interests. Any further assumption would neither preserve or enhance any interest of the Debtor or the bankrupt estate nor protect any right or interest of the Insurers.

Obviously, however, the Insurers are not really concerned with the Debtor's assumption of its obligations under the Cooperation Clauses. They have not requested assurance of the Debtor's performance of these obligations. Instead they seek to have these obligations characterized as executory under section 365 so as to obtain administrative expense priority for their

retroactive premium claims. But whether or not the Insurers' claims for retroactive premiums are entitled to administrative priority should depend upon whether their claims qualify for such priority under section 503 of the Bankruptcy Code. If they do not, there is no justification for giving them such priority and thus preferring them over other prepetition creditors by characterizing them as executory under section 365. The Court's order in conformity with this memorandum is attached.

## ORDER

A Memorandum of Opinion having been issued this date on the Debtor's motion for a determination of the treatment of prepetition insurance policies with National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and The Continental Insurance Company ("Continental"),

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT the insurance policies issued by National Union and Continental which are the subject of the Debtor's motion are not executory contracts within the meaning of section 365 of the Bankruptcy Code and, therefore, the Debtor is not required to assume nor reject them.