FOR PUBLICATION

ATTORNEY FOR APPELLANT
: 
ATTORNEY FOR APPELLEES
:

MICHAEL L. CARMIN STEPHEN A. OLIVER

Andrews, Harrell, Mann, Chapman Boren & Oliver

   & Coyne, P.C. Martinsville, Indiana

Bloomington, Indiana

IN THE

COURT OF APPEALS OF INDIANA

MICHAEL E. SALLEE, )

SALLEE & COMPANY, )

)

Appellant-Plaintiff, )

)

vs. ) No. 55A01-9808-CV-311

)

JUDITH MASON, KENT MASON, d/b/a )

DATA PROCESSING CENTER, INC., )

)

Appellees-Defendants. )

APPEAL FROM THE MORGAN SUPERIOR COURT

The Honorable Christopher L. Burnham, Judge

Cause No.  55D02-9512-CP-177

August 6, 1999

OPINION - FOR PUBLICATION

RUCKER, Judge

This case essentially involves three separate contractual disputes arising from the sale of an accounting practice and the subsequent employment of the practice's former owner and her husband.  The accounting firm of Sallee & Company ("Sallee")
(footnote: 1) appeals the grant of partial summary judgment in favor of Kenneth Mason ("Kenneth") on its claim for breach of employment contract.  Sallee also appeals judgment in favor of Judith Mason ("Judith") on its claims for breach of contract for the sale of Judith's accounting business and breach of employment contract.  Sallee raises several issues for our review which we consolidate and rephrase as:  1) did the trial court err in granting partial summary judgment on behalf of Kenneth; 2) was there sufficient evidence to support the trial court's determination that Sallee was the first to breach the contracts for the sale of Judith’s accounting business and her contract of employment; and 3) did the evidence support the damages awarded for Sallee's breach of the contract for the sale of Judith's accounting business?  On cross-appeal Judith asserts that the trial court erred in not awarding her damages consistent with Ind. Code § 22-2-5-2.

We affirm in part and reverse in part.          

The relevant facts are that from 1971 until 1990, Judith was an established public accountant in Bedford, Lawrence County, Indiana.  In 1990, Sallee began negotiating with Judith to purchase her accounting practice and to employ her.  These negotiations culminated in Sallee and Judith executing a contract for the sale ("Sale Contract") of Judith's accounting business.  Sallee and Judith also negotiated an employment contract ("Employment Contract") whereby Sallee agreed to employ Judith for ten years.

The Sale Contract and the Employment Contract contained provisions prohibiting Judith from directly or indirectly engaging in the practice of public accounting within an area consisting of Lawrence County and the counties surrounding it.  The Sale Contract required Sallee to pay Judith $1,100.00 per month from January 15, 1991, until December 15, 1995. Payments of $1,092.12 per month were to begin on January 15, 1996, and continue for twenty years.  If Sallee failed to make a monthly payment when due, it would be converted into an interest-bearing note payable within ninety days.  If the note were not satisfied in full within ninety days, the Sale Contract was to terminate, and the noncompetition covenant would be rendered void.  In the event of this scenario, Judith would be allowed to take former and new clients, along with their files, and begin to practice public accounting on her own.

The Employment Contract stated that Judith would be employed by Sallee for ten years.  However, Sallee could discharge Judith by giving her thirty days written notice if she breached the Employment Contract, demonstrated a pattern of gross negligence or exhibited a decline in moral values.  Sallee required Judith to work 2,280 hours per year.  Judith was to receive an annual salary of $34,200.00, or $15.00 per hour, payable in bimonthly installments of $1,425.00.  The Employment Contract mandated that Sallee review and adjust Judith's salary on an annual basis for cost of living increases beginning in January 1992.  A provision was also included which permitted Sallee and Judith to modify the Employment Contract by written agreement and enforce any obligation notwithstanding allegations of waiver.  

Sallee also entered into a written contract to employ Judith's husband, Kenneth.  Kenneth's contract required him to work 2,100 hours per year.  A covenant not to compete was also included which prohibited Kenneth from directly or indirectly engaging in accounting, bookkeeping, or payroll services within Lawrence County for a period of one  month for each month he was employed by Sallee.  Kenneth was further prohibited from providing any such service to any Sallee client for a period of two years following dismissal  from employment.  Sallee did allow Kenneth to accept full-time employment with a person or entity that was not a client of or in competition with Sallee.

Within one year of her employment with Sallee, Judith became dissatisfied with her working conditions.  On January 1, 1994, Judith, Kenneth, and Sallee had a meeting regarding Judith's employment with the firm.  During this meeting, Judith expressed her displeasure about working in excess of the 2,280 hours required by the Employment Contract and not receiving any additional remuneration for it.
(footnote: 2)  Although mentioned on several occasions, Sallee never responded to Judith's allegations that she had not been paid pursuant to the Employment Contract.

On November 4, 1994, Judith sent Sallee a memorandum asking for a meeting to discuss revisions of her Sale Contract and Employment Contract.  Sallee agreed to discuss these items with her on November 8, 1994.
(footnote: 3)  Sallee and Judith discussed reducing her hours and accelerating payments under the Sale Contract.  On March 4, 1995, Judith submitted a written proposal to Sallee regarding modification of her Employment Contract, requesting that Sallee respond in writing.  During this time Sallee and Judith continued discussions regarding workload, stress, and the fact that Judith had mailed resumes in anticipation of procuring new employment.  Sallee responded to Judith's memorandum on March 9, 1995, by stating that he would make some adjustments to her wages to get her through the tax season.  He also acknowledged that Judith's Employment Contract mandated an annual cost of living adjustment which would be made retroactively beginning with the next payroll period.  On March 20, 1995, Sallee and Judith met again.  Sallee told Judith that if she stayed through the end of tax season, he would allow her to reopen her practice in Bedford and that after tax season, they "would just put those contracts on the table."  R. at 729.  As a result of Sallee's representations, Judith stopped looking for other employment.  

Judith worked throughout the 1995 tax season.  On May 9, 1995, the last day of a  week-long vacation, Sallee delivered a letter of termination to Judith and Kenneth at their home.  When Judith went to work the next morning, Sallee told her that she no longer had  a job.  Judith reminded Sallee of his promise that they would discuss renegotiating the contracts and permitting her to practice on her own in Bedford.  In response, Sallee told Judith to clear her personal effects from her office and leave.  

After being discharged from Sallee's employ, Judith and her son, Kent Mason ("Kent") incorporated Data Processing Center ("DPC") on May 15, 1995.  The shareholders included Judith, Kent, and Chris Mason, another son.  Shortly after incorporating, DPC's offices opened in Martinsville, Morgan County, Indiana.  DPC employed Judith as a public accountant to provide tax services to individuals and businesses while Kent provided data entry, payroll, and billing services.  By the end of the year, DPC had more than 300 clients, most of whom were Judith's clients prior to her merger with Sallee or her clients during her tenure with Sallee.  Judith did not send notices to her clients regarding her separation from Sallee and the formation of DPC.  These clients contacted Judith to ascertain where she and  Kenneth had gone.  In setting up new accounts, neither Judith nor Kent used information prepared by Sallee.

Sallee filed a four-count amended complaint against Judith, Kenneth, Kent, and DPC on November 20, 1996.
(footnote: 4)  Defendants filed their answer, and Judith filed a counterclaim for breach of the Employment Contract.  On January 12, 1998, the trial court granted the defendants' partial motion for summary judgment, dismissing Kenneth as a party to the suit.  Partial summary judgment was also entered on behalf of the defendants, allowing them to solicit residents of Lawrence County and provide them with tax preparation, payroll, bookkeeping, and accounting services.  After a bench trial, the court entered judgment in favor of Judith and Kent on all four counts with the exception of Sallee's common law claim of indemnity.  The trial court also granted judgment in favor of Judith on her counterclaim for breach of Employment Contract.  This appeal followed.  Additional facts will be provided where relevant.

I.

Sallee first argues that the trial court erred in granting partial summary judgment on behalf of Kenneth.  According to Sallee, Kenneth breached the covenant not to compete contained in his contract of employment with Sallee.  We disagree.

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it was for the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law.  
Landmark Health Care Assocs., L.P. v. Bradbury
, 671 N.E.2d 113, 116 (Ind. 1996).  Summary judgment should be granted only if the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law.  T.R. 56(C); 
Blake v. Calumet Constr. Corp.
, 674 N.E.2d 167, 169 (Ind. 1996).  The granting of a motion for summary judgment is inappropriate if the trial court must weigh conflicting evidence to reach a decision.  
Bond v. Peabody Coal Co.
, 450 N.E.2d 542, 546 (Ind. Ct. App. 1983).  The appellant bears the burden of proving that the trial court erred in determining that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Etienne v. Caputi
, 679 N.E.2d 922, 924 (Ind. Ct. App. 1997).  On September 1, 1990, Sallee and Kenneth entered into an employment agreement which included a covenant not to compete.  The relevant part provides as follows:

(6) NON-COMPETITION AGREEMENT.  The Employee agrees to refrain from directly or indirectly carrying on or engaging in accounting, bookkeeping and payroll services within an area consisting of Lawrence County, Indiana, for a period of time equal to one month for each month, or part thereof, of Employee's service under this Agreement.  In no event shall Employee provide such services to any client of the Employer for a period of two years following the termination of this agreement.  However, nothing in this agreement shall prevent Employee from accepting full-time employment with any person or business that is not a client of or in competition with the employer.

R. at 681-82.

Kenneth's affidavit shows that after being discharged from Sallee, his only employment has been as an office payroll clerk with Victor Oolitic Stone Company in Bloomington, Monroe County, Indiana.  The Victor Oolitic Stone Company is not a client of or in competition with Sallee.  Kenneth specifically denied that he has either directly or indirectly performed accounting, bookkeeping, or payroll services either directly or indirectly through DPC.  In an attempt to refute Kenneth's denial, Sallee directs our attention to a portion of Judith's deposition in which she and Kenneth discussed starting their own accounting practice.  Such discussions do not present an issue of fact because Sallee has not demonstrated that Kenneth is a shareholder or an employee of DPC nor has it shown that Kenneth has worked in the business in a capacity forbidden by the noncompete covenant.  Therefore, we find the trial court did not err in finding that Kenneth did not breach his employment contract with Sallee.
(footnote: 5)
II. 

Next, Sallee argues that the evidence was insufficient to support the findings that Sallee was the first party to materially breach the Employment Contract and Sale Contract.  In this case the trial court entered findings of fact and conclusions of law pursuant to Sallee's request.  Where a party challenges special findings and conclusions entered pursuant to Ind. Trial Rule 52(A), our standard of review is two-tiered.  First, we determine whether the evidence supports the findings, and second whether the findings support the judgment.  
City of Muncie v. Lowe
, 705 N.E.2d 528, 530 (Ind. Ct. App. 1999), 
trans. denied
.  The trial court's findings and conclusions will be set aside only if they are clearly erroneous.  
Id.
  Findings of fact are clearly erroneous if the record lacks any facts or reasonable inferences to support them.  
Id.
  In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses.  
Bloodgood v. Bloodgood
, 679 N.E.2d 953, 956 (Ind. Ct. App. 1997).  Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them.  
Yates-Cobb v. Hays
, 681 N.E.2d 729, 733 (Ind. Ct. App. 1997).

Sallee challenges the trial court's Finding 42(b)iii which states that Sallee committed the first material breach of the Employment Contract because it:

(1) Failed to compensate Judith for hours worked in excess of the agreed 2280 hours per year in 1990, 1991 and 1992, as required by paragraph (4) of  the Employment Contract.

(2) Failed to review Judith's salary on an annual basis beginning the first week of January, 1992, again in 1993, and again in 1994, all as required by paragraph (6) of the Employment Contract.

(3) Failed to adjust Judith's salary, annually, for the cost of living in 1992, 1993 and 1994, all as required by paragraph (6) of the Employment Contract.

(4) Terminated Judith's employment on May 9, 1995 without giving . . . thirty (30) days written notice to Judith, as required by paragraph (10) of the Employment Contract.

R. at 175-76.

Two different versions of the Employment Contract were offered by Judith and Sallee at trial.  The version which Judith offered required her to work 2,280 hours per year.  Sallee's version of the Employment Contract required Judith to work 2,500 hours annually.  Without citing to authority, Sallee claims that because the "2,500 hours[] was consistent with the draft agreement reviewed by Judith's attorney it became Judith's burden to produce evidence demonstrating that Exhibit 3 was signed in error or was an altered document and therefore void."  Brief of Appellant at 16.  Sallee is essentially asking us to substitute our judgment and his Employment Contract for that of the trial court which we refuse to do.  
Tofany v. NBS Imaging Systems, Inc.
, 597 N.E.2d 23, 30 (Ind. Ct. App. 1992), 
affirmed
 
on
 
transfer
, 616 N.E.2d 1034, 1040 (Ind. 1993).  We therefore find no error in the trial court's determination that Judith was required to work 2,280 hours annually and that she was entitled to compensation for any excess hours worked.

The Employment Contract stated that the "salary shall be reviewed on an annual basis beginning the first week of January 1992 and adjusted annually for the cost of living."  R. at 673.  Sallee presented no evidence that it reviewed Judith's salary in 1992, 1993, and 1994 as required by the Employment Contract.  In addition, the record does not reveal that any cost of living adjustments were made for 1992, 1993, and 1994.  The only evidence of a cost of living adjustment is a sixteen percent retroactive adjustment made to Judith's salary in 1995.  Sallee asserts that Judith relinquished her right to an annual review because she did not demand one.  
See
 
Kokomo Veterans, Inc. v. Schick
, 439 N.E.2d 639, 645 (Ind. Ct. App. 1982) (stating that the beneficiary of a contractual provision may waive his right to performance if he was required to act in order to procure the provision's fulfillment).  However, the Employment Contract contains a provision which states that "Employer and Employee agree that the failure to enforce any provision or obligation under this Agreement shall not constitute a waiver thereof or serve as a bar to the subsequent enforcement of such provision or obligation."  R. at 676.  Because parties are free to contract as they see fit, 
Martin Rispens & Son v. Hall Farms, Inc.
, 621 N.E.2d 1078, 1085 (Ind. 1993), we find that Judith did not waive her right to an annual review of and cost of living adjustment to her salary.  Thus, again we find no error.

Upon termination, the Employment Contract provided that "the Employer may terminate this agreement by giving thirty (30) days written notice to the Employee."  R. at 675.  The record shows that Michael Sallee delivered a letter to Judith and Kenneth on May 9,  1995.  The letter stated that it was his "understanding that neither of you will be returning to  your employment" although neither Judith nor Kenneth had tendered a resignation to Sallee.  R. at 743.  The letter makes no mention of a thirty-day notice as required by the Employment Contract.  The letter delivered by Michael Sallee was sufficient support for the finding that Sallee did not give Judith the requisite thirty-day notice required for dismissal from her employment.  Because there is a sufficient quantum of proof showing that Sallee was the first party to materially breach the Employment Contract, Judith was then no longer required to abide by the covenant not to compete.
(footnote: 6)  
Licocci v. Cardinal Assocs., Inc.
, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986).

Sallee next contends that there is insufficient evidence to support the trial court's finding that it was the first party to breach the Sale Contract.  According to Sallee, Judith was the first party to breach because she first violated the noncompete agreement contained within the Sale Contract by serving her former clients from Sallee.  Because of this alleged breach, Sallee stopped making payments under the Sale Contract after May 15, 1995, and brought a declaratory judgment action for a determination of its obligation.  We do not agree. The covenant not to compete in the Sale Contract is similar to that contained in the Employment Contract.  The noncompete agreement in the Employment Contract does provide that the "covenant shall be read in conjunction with and in addition to its companion provision in the parties' Contract for Sale of Public Accounting Practice."  R. at 675.  The noncompete provision in the Sale Contract states that Judith will “refrain from directly or indirectly carrying on or engaging in any business that is similar to the business being sold to the Buyer under this contract” within Lawrence County and its adjacent counties.
(footnote: 7)  R. at 286.  Although not solicited by Judith, Kenneth, or Kent, the majority of DPC's clients are former Sallee clients.  Sallee claims that this constitutes indirectly engaging in the practice of accountancy in contravention of the agreement.

 As a result of Sallee's first material breach of the Employment Contract, we have already determined that Judith was not required to abide by the noncompete agreement contained therein and incorporated by reference into the Sale Contract.  In fact, Judith was required to mitigate her damages caused as a result of Sallee's initial breach by seeking employment elsewhere.   
T & W Bldg. Co. v. Merrillville Sport & Fitness, Inc.
, 529 N.E.2d 865, 867 (Ind. Ct. App. 1988).  Sallee may not now attempt to enforce the noncompete agreement in the Sale Contract which has incorporated by reference the voided noncompete agreement from the Employment Contract.  A conflict between the validity of the two noncompete agreements constitutes an ambiguity to be construed against Sallee, the drafter of the Sale Contract.  
Ruff v. Charter Behavioral Health System
, 699 N.E.2d 1171, 1176 (Ind. Ct. App. 1998), 
trans. denied
.  By not continuing payments on the Sale Contract, the court did not err in determining that Sallee was the first party to breach the Sale Contract.

III.

Finally, Sallee asserts that the evidence did not support the $141,331.39 damage award to Judith as a result of Sallee's breach of the Sale Contract.  Sallee argues that the remedies clause contained in the Sale Contract precludes such an award because there was compliance with its provisions.  We agree with Sallee.  

The remedies clause provides for the following procedure in the event of failure to make payment.  

(11) FAILURE TO PAY.  Should Buyer fail to pay his monthly payment obligation to Seller within 30 days of the monthly due date as set forth in paragraph three, said payment shall be converted to an interest bearing note at 15% payable within 90 days from the date the note was issued.  If the note is not paid within the 90 day period, this agreement shall terminate and Seller shall take all of the client files that she brought into the business plus any new clients she has obtained since September 1, 1990 and re-enter into the practice of public accounting and the non-competition agreement shall be null and void.

R. at 289.  At the time of the judgment Sallee had not paid Judith $2,200.00 for the noncompete agreement and $139,131.39 for the client list and goodwill provision of the Sale Contract.  We find no evidence in the record that Judith ever converted any past due amounts to an interest-bearing note payable in accordance with the contract.  In any event, it is clear from this provision that if Sallee failed to pay the note, Judith's only recourse would be to take her clients and begin practicing accounting without the restrictions of the noncompete agreement.  The Sale Contract does not contemplate that she take her clients and continue to receive payment under the Sale Contract.  Such an interpretation would create a new contract containing new rights and obligations for the parties which a court is not permitted to do.  
General Motors Corp. v. Northrop Corp.
, 685 N.E.2d 127, 135 (Ind. Ct. App. 1997), 
trans. denied
.  Hence, we conclude that the trial court erred in awarding Judith $141,339.31 in damages resulting from breach of the Sale Contract because she did not follow the remedy for failure to pay set forth in the Sale contract.

COUNTERCLAIM

On cross appeal Judith contends that she was entitled to double damages and attorney's fees in addition to the $2,651.55 in unpaid wages which Sallee owes her.  We agree.

Ind. Code § 22-2-5-1 requires that an employer pay his employees within ten days of the date wages are earned.  If an employer fails to make a timely payment of wages, he is liable for the unpaid wages in addition to liquidated damages in an amount equal to double the unpaid wages.  Ind. Code § 22-2-5-2;  
Valadez v. R.T. Enterprises, Inc.
, 647 N.E.2d 331, 333 (Ind. Ct. App. 1995).  An employer is also liable for reasonable attorney's fees sought in the collection of unpaid wages.  Ind. Code § 22-2-5-2.

The trial court awarded Judith $2,651.55 in unpaid wages.  The trial court should have also awarded $5,303.10
(footnote: 8) in liquidated damages in addition to a reasonable fee to Judith's attorney for work performed regarding Sallee's breach by failing to pay Judith for time worked in excess of the 2,280 hours provided for in the Employment Contract.    

Judgment affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion. 

BAKER, J., and BROOK, J., concur.

FOOTNOTES
1:  Michael Sallee, the owner of Sallee & Company, is also a party to this action.  For purposes of this appeal, Michael Sallee and Sallee & Company will be considered the same entity.

2:  
Based on Sallee's notes from the January 1st meeting, he does not dispute the number of hours Judith was required to work.

3:  Around this time Judith's health began to worsen as a result of a stress-induced heart condition.  

4:  Sallee's original complaint was dismissed.  The amended complaint requested declaratory judgment determining the rights and obligations of the parties, damages for Judith's and Kenneth's breaches of their contracts with Sallee, damages for Kent's alleged tortious interference with Judith's Employment Contract, and an accounting of proceeds which Judith, Kenneth, Kent, and DPC received during and after the termination of the contracts. 

5:  Because we find that Kenneth did not violate the noncompete covenant, we need not address Sallee's contention that Kent tortiously interfered with Kenneth's employment contract with Sallee.  
See
 
National City Bank v. Shortridge
, 689 N.E.2d 1248, 1252 (Ind. 1997) (stating that in order to maintain a suit for tortious interference both a breach and damages must be the result of the inducement).   

6:  Because we find that Judith did not violate the noncompete covenant, we need not address Sallee's contention that Kent tortiously interfered with Judith's employment contract with Sallee.  
See
 
National City Bank
, 689 N.E.2d at 1252 (stating that in order to maintain a suit for tortious interference both a breach and damages must be the result of the inducement).   

7:  The covenant in the Employment Contract provides that Judith "agrees to refrain from directly or indirectly carrying on or engaging in the practice of public accountancy within an area consisting of Lawrence County, Indiana, and its adjacent counties.”  R. at 675.

8:  $2,651.55 x 2 = $5,303.10.